**In re KNOX–POWELL–STOCKTON CO., Inc., Limited.**

**UNITED STATES v. STATE OF CALIFORNIA et al.**

**No. 8673.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 14, 1939.

James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Lester L. Gibson, Sp. Assts. to Atty. Gen., Benjamin Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., Alva C. Baird, Sp. Asst. to U. S. Atty., and Eugene Harpole, Sp. Atty., U. S. Treasury Dept., all of Los Angeles, Cal., for the United States.

U. S. Webb, Atty. Gen. of California, and John O. Palstine, Deputy Atty. Gen., for appellees.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal by the United States from an order of the District Court con-

firming an order of a referee in bankruptcy. The order, which was made after hearing upon objections filed by the Trustee in Bankruptcy, affected ten separate claims. By the order eight claims were allowed in full; one was allowed in part; and one was disallowed. The order established the priority of the claims which were allowed. They were grouped as follows: (a) "prior lien claims for taxes" (b) "expenses of administration" (c) the claim of the United States for taxes "allowed as prior claim under the provisions of Section 64b, subsection 6 of the Bankruptcy Act of 1898 as amended [in 1926, 11 U.S.C.A. § 104(b) (6)] * * *" and (d) the claim of one Robert Gray "allowed as a prior claim * * * under the provisions of section 64b subsection 7 of the Bankruptcy Act of 1898 as amended". The trustee was directed by the order to pay to the United States all sums remaining in his possession after the payment of "lien claims" and "expenses of administration".

The claims designated "lien claims" were five in number: (1) the claim of the State of California for $519.32 for taxes and penalties payable under the provisions of the California Oil and Gas Conservation Act upon oil and gas produced by the bankrupt during the years 1931 and 1932, (2) the claim of California Production Company for $402.66 for taxes for 1933-1934 paid by the claimant upon assets which had been sold by the trustee free of liens, (3) the claim of William M. Walsh, Assistant Franchise Tax Commissioner of the State of California for $25.26 for franchise taxes which accrued January 1, 1933, (4) the claim of Ed W. Hopkins, County Tax Assessor of Los Angeles County for $202.26 for personal property taxes for the year 1933 (this claim was for $767.59, but was allowed only in part), and (5) the claim of W. O. Welch, County Tax Collector of Los Angeles County, for $23.27 for additional personal property taxes for the year 1932.

The "expenses of administration" claims were two: (1) the claim of Ray L. Riley, Controller of the State of California, for $16.29 for taxes payable under the provisions of the California Oil and Gas Conservation Act upon oil and gas produced upon the property belonging to the bankrupt estate during the year 1933, and (2) the claim of H. L. Alfonso, County Tax Collector of Los Angeles County, for taxes on personal property in the possession of the trustee on the first Monday in March, 1934.

It is stipulated that the trustee has on hand approximately $8,900, which moneys constitute the entire assets of the estate; that said moneys were in large part derived from the sale by the trustee of the bankrupt's interest in the land from which said bankrupt had produced and extracted oil and gas during the years 1931 and 1932. It is further stipulated that no lien arose to secure the payment of the taxes due the United States prior to June, 1933. The adjudication in bankruptcy was on May 6, 1933.

The position of the United States on appeal is that the court erred in giving priority to the tax claims designated as "prior lien claims" over the tax claim of the United States.[1] The principal attack is directed against the claim of California for taxes and penalties payable under the provisions of the Oil and Gas Conservation Act. It is said that all tax claims are governed by the provisions of section 64b of the Bankruptcy Act of 1898, as amended in 1926 (11 U.S.C.A. § 104(b)[2] and that where, as here, the amount of the estate is not sufficient to pay the taxes, it should be prorated between the various tax claimants. It is conceded that if the taxes given priority were secured by liens such as are preserved under section 67d of the same Act (11 U.S.C.A. § 107(d), then such taxes would be entitled to payment prior to the payment of those due the United States, but it is contended that they are not, since the section relates only to liens "perfected"

---

[1] The assignment of errors are, if they be assumed to be sufficiently specific to comply with our Rule 11, broad enough to challenge the allowance of priority to the claims designated "expenses of administration". However, appellant's brief makes no reference to these claims, and consequently we do not consider the propriety of the order as it affected them.

[2] 11 U.S.C.A. § 104 provides: "(a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality, in the order of priority as set forth in paragraph (b) hereof * * *.

"(b) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (6) taxes payable under paragraph (a) hereof * * *".

at the time of adjudication, and that the lien here involved was on May 6, 1933, the date of adjudication in this case, only "inchoate" and not "perfected".

Section 67d provides: "Liens given or accepted in good faith and not in contemplation of or in fraud upon the provisions of this title, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to import notice, shall, to the extent of such present consideration only, not be affected by anything herein". This section makes it clear that adjudication in bankruptcy does not interfere with existing valid liens, and that the trustee takes the property of the bankrupt subject to all such liens as would have been enforceable against it in the hands of the bankrupt himself. Hiscock v. Varick Bank, 206 U.S. 28, 29, 27 S.Ct. 681, 51 L.Ed. 945; Section 70a, Bankruptcy Act 1898, as amended in 1926 (11 U.S.C.A. § 110 (a).[3]

The laws of the state where the adjudication is had are controlling as to the validity and extent of the lien. York Mfg. Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782; Hiscock v. Varick Bank, supra; Marshall v. State of New York, 254 U.S. 380, 41 S.Ct. 143, 65 L.Ed. 315. And statutory liens come within the provisions of section 67d. Richmond v. Bird, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543; In re Brannon, 5 Cir. 1933, 62 F.2d 959, 961; In re San Joaquin Valley Packing Co., 9 Cir. 1924, 295 F. 311. Section 64a does not give taxes any priority of payment over liens which are protected by section 67d, for section 67d says that liens included therein are not affected by any provisions of the Bankruptcy Act. In re Caswell Const. Co., D.C.N.Y.1926, 13 F.2d 667, 669. And section 67d applies against the United States as against any other creditor, since the Act was passed with the United States in the mind of Congress. Davis v. Pringle, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974; Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 160, 32 S.Ct. 457, 56 L.Ed. 706.

To support its position that section 67d preserves only "perfected" liens, appellant cites: Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621, New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, and Gerson, Beesley & Hampton v. Shubert Theatre Corp., D.C.S.D.N.Y.1934, 7 F.Supp. 399. All of these cases arose under section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, which grants priority to the United States over all other creditors when the debtor is insolvent. The cited cases establish that under this section an inchoate lien will not defeat the priority established by said section. But this being a bankruptcy proceeding, the provisions with respect to priority under section 3466 of the Revised Statutes do not apply here. Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., supra; Davis v. Pringle, supra; Claude D. Reese, Inc., v. United States, 5 Cir.1935, 75 F.2d 9. And in construing section 67d of the Bankruptcy Act our inquiry as to what constitutes a lien thereunder is not embarrassed by the auxiliary consideration as to whether the lien of a tax not presently enforceable is sufficient to avail against a statutory preference which is to be liberally construed in favor of the United States. Spokane County v. United States, 279 U.S. 80, 92, 93, 49 S.Ct. 321, 73 L.Ed. 621, quoting Price v. United States, 269 U.S. 492, 499, 46 S.Ct. 180, 70 L.Ed. 373.

Applying the foregoing rules to the case at hand we are constrained to hold that the action of the trial court, confirming the order of the referee granting priority as a lien claim to the claim of the State of California for taxes payable under the Oil and Gas Conservation Act (Act 4916, Deering's General Laws) upon oil and gas produced by the bankrupt during the years 1931 and 1932, was correct.

Section 41 of that act provides: "The assessments and charges levied under the provisions of this act shall constitute a lien upon all the property of every kind and nature belonging to the persons, firms, corporations and associations assessed under the provisions hereof, and the assessments and charges levied under the provisions of this act upon oil or gas removed from any land in this state shall constitute a lien

---

[3] 11 U.S.C.A. § 110 (a) provides: "(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt * * *".

upon the land from which such oil or gas has been extracted, which lien shall attach on the first Monday in March *of each year*. * * *" (Italics added.)

Section 23 of the act reads: "Every person, firm, corporation, or association operating any petroleum well or wells in this state shall annually pay a charge to the state treasurer at a uniform rate per barrel of petroleum produced for the preceding calendar year at the time and in the manner hereinafter provided, based upon a verified report as herein provided."

Section 29 requires a report by the producer within ten days after the first Monday in March of each year, of the oil and gas produced during the preceding calendar year. Section 34 of the Act provides for the assessment between the first Monday in March and the third Monday before the first Monday in July in each year.

The lien provided by section 41 attaches on the first Monday in March in the year following the year during which the oil and gas was produced upon which the assessment provided by section 34 was based. Thus in the present case there arose a lien for the taxes on the 1931 production on the first Monday in March, 1932; and a lien for the taxes on the 1932 production arose on the first Monday in March, 1933. It is argued contra to this conclusion that no lien attaches until the first Monday in March in the year following that in which the assessment is made because that is the first "first Monday in March" in which there is an assessment to be secured. But it has been held by the California Courts that tax liens attach on the first Monday in March in each year, notwithstanding the taxes are not fixed or payable until the assessment has been thereafter made, it being said that the subsequent assessment does not create the lien, but is merely one of the steps for its enforcement. County of San Diego v. County of Riverside, 1899, 125 Cal. 495, 58 P. 81; City of Santa Monica v. Los Angeles County, 1911, 15 Cal.App. 710, 115 P. 945; see cases collected, 24 Cal.Jur.Taxation, § 208, p. 218, 219. In other Circuits it has been held that where a lien arose prior to adjudication in bankruptcy it was entitled to priority under section 67d even though the amount thereof could not be ascertained until after the adjudication. Britton v. Western Iowa Co., 8 Cir.1925, 9 F.2d 488, 45 A.L.R. 711;

Bates v. Archer, 6 Cir.1923, 288 F. 182; cf. New York-Brooklyn Fuel Corporation v. Fuller, 2 Cir.1926, 11 F.2d 802. With these cases we are in accord and we consequently conclude that insofar as the liens represent amounts due for taxes they were preserved by section 67d.

We think our conclusion on this point disposes of the contention that insofar as the claim represented amounts due as penalties for non-payment of the 1931 and 1932 taxes no prior lien existed. Said penalties accrued under section 39 of the Oil and Gas Conservation Act, which reads as follows: "The charges levied and assessed under the provisions of this act shall be due and payable on the first Monday in July in each year, and one-half thereof shall be delinquent on the sixth Monday after the first Monday in July at six o'clock P. M. and unless paid prior thereto, fifteen per cent shall be added to the amount thereof, and unless paid prior to the first Monday in February next thereafter at six o'clock P. M. an additional five per cent shall be added to the amount thereof, and the unpaid portion, or the remaining one-half of said charges shall become delinquent on the first Monday in February next succeeding the day upon which they became due and payable, at six o'clock P. M.; and if not paid prior thereto five per cent shall be added to the amount thereof."

Section 41 (quoted supra) provides a lien for the assessments and charges levied under the provisions of the act. Since, under the California law, a percentage penalty for delinquency is as much a part of the tax as the principal amount (Carpenter v. Peoples Mut. Life Ins. Co., 1937, 10 Cal.2d 299, 74 P.2d 508, 511; and see, State of California v. Hisey, 9 Cir. 1936, 84 F.2d 802, 805) the lien, which arose before the adjudication, was sufficiently broad to support the after accruing penalties as well as the taxes proper. It may be conceded that section 57j of the Bankruptcy Act (11 U.S.C.A. § 93(j), precludes the "allowance" of a claim for penalties, but as pointed out earlier, adjudication in bankruptcy does not affect a valid and existing lien, consequently where a lien exists to support a penalty at the time of adjudication, section 57j does not come into operation. Hiscock v. Varick Bank, supra; see, also, State of California v. Moore, 9 Cir.1937, 88 F.2d 564. In New York v. Jersawit, 263 U.S. 493, 44 S.Ct.

984

167, 68 L.Ed. 405, cited by appellant, there was a simple claim for priority unsupported by a lien.

 We next direct our attention to appellant's arguments against the granting of lien claim status to the claim of William M. Walsh, Assistant Franchise Tax Commissioner of the State of California for $25.26 for franchise taxes which accrued January 1, 1933. It is argued that since the proof filed claimed priority under section 64a of the Bankruptcy Act and did not allege' that it was supported by a lien, it was erroneous to give it priority as a lien claim. No contention is made that it was not in fact supported by a lien at the date of adjudication. Although the claim itself was insufficient to raise the issue that it was entitled to lien status, that issue was raised by the objection thereto filed by the trustee, which alleged that the claim "is not supported by a lien and is, therefore, subordinate to the claims of the United States of America for income taxes". The issue having been raised, it was proper for the District Court to rule thereon. Cf. Commonwealth of Massachusetts v. Meehan, 1 Cir.1933, 67 F.2d 638, 639.

 Appellant next argues that the claim of Ed. W. Hopkins, Tax Assessor of Los Angeles County, for personal property taxes for the year 1933 should not have been given priority over the claim of the United States, "since it appears that it would not be due and payable until the succeeding year". Section 3717 of the California Political Code provides as follows: "Every tax due upon personal property is a lien · upon the real·property of the owner thereof, from and after twelve o'clock m. of the first Monday in March in each year." The lien for the 1933 tax attached on the first Monday in March, 1933. County of San Diego v. County of Riverside, supra; City of Santa Monica v. Los Angeles County, supra.

 The argument against the allowance as a "prior lien claim" of the claim of W. O. Welch, County Tax Collector of Los Angeles County, for a deficiency tax for the year 1932 "resulting from an increase in the tax rate over previous year at which the original tax bills were computed", is that it should have been denied priority for indefiniteness. We think the claim sufficiently definite. It is immaterial when the additional deficiency tax was determined and assessed—the lien for the tax attached in 1932. Cal.Pol.Code, §§ 3717 and 3718.

 In his brief appellant also challenges the action of the District Court in ruling that the claim of the California Production Company is entitled to lien status. Since no assignment of error relates to this matter we do not pass thereon.[4] In re Wingert, 4 Cir.1937, 89 F.2d 305, 307; Britton v. Western Iowa Co., supra, page 491.

The order is affirmed.

---

[4] The errors assigned were:

I. The Court erred in holding that the *claims for taxes filed by the State of California and its political subdivisions* are entitled to payment prior to payment in full of the claims allowed for unpaid income taxes due the United States **of** America.

II. The Court erred in confirming the Order of the Referee in Bankruptcy, dated November 17, 1936, which subordinated payment of the claim of the United States for unpaid income taxes assessed for the taxable' year 1930, to payment of the *claims for taxes filed by the State of California and its political subdivisions,* for the reason that under the law and the record, the claim of the said United States of America is entitled to be paid in full before payment is made upon the claim filed by the State of California. (Italics added.)